UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID MCDONALD,<br>JAMES SCHEURICH,<br>STEVEN ALAN CARR, and<br>DAVID G. SCHUSTER,<br><br>   *Plaintiffs*,<br>  v.<br><br>TRUSTEES OF INDIANA UNIVERSITY, in<br>their official capacities, and<br>TRUSTEES OF PURDUE UNIVERSITY,<br>in their official capacities,<br><br>   *Defendants*.<br>───────────────────────<br>STATE OF INDIANA,<br><br>   *Intervenor*. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:24-cv-01575-RLY-CSW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**TRUSTEES OF INDIANA UNIVERSITY'S ANSWER TO COMPLAINT
OF PLAINTIFFS MCDONALD AND SCHEURICH**

Defendant Trustees of Indiana University ("IU" or "Defendants"), by counsel, now submit this Answer in response to the Complaint filed by Plaintiffs McDonald and Scheurich.  IU notes that, for ease of future reference, the Complaint allegations are set forth verbatim, with IU's responses following each allegation.

**Introduction**

1.  Indiana Code § 21-39.5 *et seq*., part of Senate Enrolled Act 202 ("S.E.A. 202" or "the Act"), imposes a variety of requirements and restrictions on faculty members at Indiana's public colleges and universities.  It does so by requiring that those institutions' boards of trustees enact

specific policies—the contents of which are dictated by the statute—regarding faculty members' in and out-of-classroom activities, including their instructional activities and interactions with students.

**ANSWER:**    The allegations in this paragraph are legal assertions to which no response is required.  To the extent a response is required, Defendants state that Senate Enrolled Act 202 ("S.E.A. 202" or "the Act") speaks for itself.  Defendants deny any remaining allegations in the foregoing paragraph.

2.    The Act mandates that the boards of trustees enact policies requiring that faculty members be denied tenure or promotion, and that they be subjected to discipline through and including termination, if they are deemed "unlikely" to "foster a culture of free inquiry, free expression, and intellectual diversity" within their institution, or if they are deemed to have failed to foster such cultures in the past.  It also requires the boards to enact policies imposing the same consequences if faculty are deemed unlikely to or have failed to "expose students to scholarly works from a variety of political or ideological frameworks that may exist within and are applicable to the faculty member's academic discipline."  The Act also mandates that the boards implement policies requiring that tenured faculty members be formally reevaluated every five years for compliance with these mandates.

**ANSWER:**    The allegations in this paragraph are legal assertions to which no response is required.  To the extent a response is required, Defendants state that the Act speaks for itself. Defendants deny any remaining allegations in the foregoing paragraph.

3.    The plaintiffs, tenured faculty members at Indiana University, previously filed a lawsuit in this Court challenging the constitutionality of this Act.  *Carr et al. v. Trustees of Purdue University, et al.* 1:24-cv-772-SEB-MJD (S.D. Ind.).  That complaint was dismissed without prejudice for lack of subject-matter jurisdiction, because at the time the plaintiffs filed their complaint, Indiana University had not yet promulgated the policies mandated by the Act.  Those policies have now been adopted

and require the plaintiffs to comply with the Act. Those policies and the Act violate the First and Fourteenth Amendments to the United States Constitution, and the plaintiffs are entitled to a declaration that they are unconstitutional and to an injunction preventing their enforcement.

**ANSWER:** Defendants admit that Plaintiffs previously filed a lawsuit in this Court raising constitutional claims involving the Act and seeking to enjoin enforcement of the Act, and that this Court dismissed "the whole matter" without prejudice for lack of jurisdiction, per rationale stated in the Court's decision, which speaks for itself (*Carr v. Trustees of Purdue University*, 2024 WL 3819424 (S.D. Ind. 2024)). Defendants otherwise state that the allegations in this paragraph are legal assertions to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations; therefore, Defendants deny such allegations.

**Jurisdiction, venue, cause of action**

4. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

**ANSWER:** Defendants admit that this Court has such jurisdiction based on the allegations in Plaintiffs' Complaint.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**ANSWER:** Defendants admit that venue is proper in this Court based on the allegations in Plaintiffs' Complaint.

6. Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

**ANSWER:** The allegations in this paragraph are legal assertions to which no response is required. Defendants deny any remaining allegations or implications contained in the foregoing paragraph.

7.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the Constitution of the United States.

**ANSWER:**      Defendants admit that Plaintiffs seek to bring this action under the referenced statute.   Defendants deny any remaining allegations or implications contained in the foregoing paragraph.

**Parties**

8.      David McDonald is an adult resident of Monroe County, Indiana.  He is a tenured faculty member at Indiana University Bloomington and will be teaching there in the 2024-2025 school year.

**ANSWER:**      Upon information and belief, Defendants admit that Professor McDonald is a tenured faculty member at Indiana University Bloomington and is scheduled to teach there in the 2024-2025 school year.  Defendants are without knowledge or information sufficient to admit or deny Professor McDonald's current residency.

9.      James Scheurich is an adult resident of Marion County, Indiana.  He is a tenured faculty member at Indiana University Indianapolis and will be teaching there in the 2024-2025 school year.

**ANSWER:**      Upon information and belief, Defendant Trustees of Indiana University admits that Professor Scheurich is a tenured faculty member at Indiana University Indianapolis and is scheduled to teach there in the 2024-2025 school year.  Defendants are without knowledge or information sufficient to admit or deny Professor Scheurich's current residency.

10.      The Trustees of Indiana University are the University's governing body and are charged with control of Indiana University.  Ind. Code § 21-27 *et seq.*

**ANSWER:**      Defendants admit that multiple portions of Article 27 of Indiana Code's Title 21 reference the powers and/or responsibilities of the "Trustees of Indiana University" and/or

the "board of trustees of Indiana University," including Indiana Code § 21-27-4-2's language that "[t]he board of trustees may in the name of 'The Trustees of Indiana University' sue and be sued," Indiana Code § 21-27-4-3's language that "[t]he board of trustees may make all bylaws necessary to carry into effect the powers conferred on the board of trustees," and Indiana Code § 21-27-4-4's language that "[t] he board of trustees shall create a diversity committee at the home campus and at each regional campus to do" certain activities.  Defendants further state that Title 21's Article 27, which has ten chapters and dozens of statutory sections, speaks for itself.

**The challenged statute**

11.    Senate Enrolled Act 202 amends the Indiana Code concerning higher education.

**ANSWER:**    Defendants admit that S.E.A. 202 amends part of Indiana Code Title 21, entitled "Higher Education," and admit that the Act states that it is "AN ACT to amend the Indiana Code concerning higher education."  Defendants otherwise state that the Act speaks for itself.

12.    Section 11 of the Act creates a new statutory article, codified at Indiana Code § 21-39.5 *et seq.*, entitled "State Educational Institutions: The Protection of Free Inquiry, Free Expression, and Intellectual Diversity."

**ANSWER:**    Defendants admit that the Act creates such an article with the referenced title, and further state that the Act speaks for itself.

13.    The statutory prohibitions and requirements imposed by this article apply to state higher educational institutions (referred to in the Act as "institutions"), including Indiana University and its Board of Trustees.  Ind. Code § 21-39.5-1 *et seq.*

**ANSWER:**    Defendants admit that the Act says "'Board of Trustees' refers to the board of trustees of," *e.g.*, "Indiana University" (Ind. Code § 21-39.5-1-2); admit the Act says "'Institution' refers to a state educational institution" (Ind. Code § 21-39.5-1-4); and admit Indiana Code § 21-7-13-32

says, *e.g.*, the term "[s]tate educational institution" "refers to," *e.g.*, "Indiana University." Defendants

otherwise state that the referenced statutory "article" speaks for itself.

       14.    The portion of the Act codified at Indiana Code § 21-39.5-2-1(b) provides in relevant

part as follows:

> [E]ach board of trustees of an institution shall establish a policy that provides that a
> faculty member may not be granted tenure or a promotion by the institution if, based
> on past performance or other determination by the board of trustees, the faculty
> member is:
>
>     (1)    unlikely to foster a culture of free inquiry, free expression, and
>            intellectual diversity within the institution; [or]
>
>     (2)    unlikely to expose students to scholarly works from a variety of
>            political or ideological frameworks that may exist within and are
>            applicable to the faculty member's academic discipline.

    **ANSWER:**    Defendants admit that the referenced portion of the Act has, among other

language, the language referenced in this paragraph. Defendants admit that the referenced language

appears as part of the Act. Defendants otherwise state that the referenced portion of the Act speaks

for itself.

       15.    The statutory terms "free inquiry" and "free expression" are not defined, either in this

statutory provision or elsewhere in the Code, but the term "intellectual diversity" is defined as

"multiple, divergent, and varied scholarly perspectives on an extensive range of public policy issues."

Ind. Code § 21-39.5-1-5.

    **ANSWER:**    Defendants admit that the words "free inquiry" and "free expression" are not

specifically and expressly defined in any definitional provision of the Act, and Defendants admit that

the Act specifically and expressly defines "intellectual diversity" to have the definition referenced in

this paragraph. Defendants otherwise state that the Act speaks for itself.

       16.    S.E.A. 202 further provides, in relevant part:

Not later than five (5) years after the date that a faculty member is granted tenure by an institution and not later than every five (5) years thereafter, the board of trustees of an institution shall review and determine whether the faculty member has met the following criteria:

    (1)    Helped the institution foster a culture of free inquiry, free expression, and intellectual diversity within the institution.

    (2)    Introduced students to scholarly works from a variety of political or ideological frameworks that may exist within the curricula established by the:

        (A)    board of trustees of the institution under IC 21-41-2-1(b); or

        (B)    faculty of the institution acting under authority delegated by the board of trustees of the institution.

    (3)    While performing teaching duties within the scope of the faculty member's employment, refrained from subjecting student to views and opinions concerning matters not related to the faculty member's academic discipline or assigned course of instruction.

    (4)    Adequately performed academic duties and obligations.

    (5)    Met any other criteria established by the board of trustees.

Ind. Code § 21-39.5-2-2(a).

**ANSWER:**   Defendants admit that the Act has, among other language, the language referenced in this paragraph.  Defendants otherwise state that the Act speaks for itself.

17.   The Act requires each institution to "adopt a policy that establishes disciplinary actions, including (1) termination; (2) demotion; (3) salary reduction; (4) other disciplinary action as determined by the institution; or (5) any combination of subdivisions (1) through (4)" that "the institution will take if the board of trustees determines in a review conducted under subsection (a) that a tenured faculty member has failed to meet one (1) or more of the criteria described in [Indiana Code § 21-39.5-2-2] (a)(1) through (a)(5)."  Ind. Code § 21-39.5-2-2(d).

**ANSWER:**   Defendants admit that the Act states "[t]he institution shall adopt a policy that establishes disciplinary actions, including" those referenced in the paragraph "that the institution will

take if the board of trustees determines in a review conducted under subsection (a) that a tenured faculty member has failed to meet one (1) or more of the criteria described in subsection (a)(1) through (a)(5)." Ind. Code § 21-39.5-2-2(d). Defendants otherwise state that the Act speaks for itself.

18.    An institution is also required, before "renew[ing] an employment agreement with," "mak[ing] a bonus decision regarding," or "complet[ing] a review or performance assessment" of a faculty member, to "give substantial consideration to the faculty member's…performance regarding the criteria described in section [Indiana Code § 21-39.5-2-2] (a)(1) through [](a)(5) of this chapter." Ind. Code § 21-39.5-2-3(b).

**ANSWER:**    Defendants admit that the Act states "[t]he institution shall adopt a policy that establishes disciplinary actions, including" those referenced in the paragraph "that the institution will take if the board of trustees determines in a review conducted under subsection (a) that a tenured faculty member has failed to meet one (1) or more of the criteria described in subsection (a)(1) through (a)(5)." Ind. Code § 21-39.5-2-2(d). Defendants otherwise state that the Act speaks for itself.

19.    Each institution is required to establish and communicate a procedure by which students and employees may submit complaints that any faculty member "is not meeting the criteria described in [Indiana Code § 21-39.5-2-2] (a)(1) through [](a)(5)." Ind. Code § 21-39.5-2-4(a)(1), (2). If any complaints are received, the Act requires the institution to refer them to "appropriate human resource professionals and supervisors for consideration in employee reviews and tenure and promotion decisions." Ind. Code § 21-39.5-2-4(a)(3).

**ANSWER:**    Defendants admit that the Act states, in part, that "[e]ach institution shall … [e]stablish a procedure that allows both students and employees to submit complaints that a faculty member or person described in section 3(a) of this chapter is not meeting the criteria described in section 2(a)(1) through 2(a)(5) of this chapter" and shall "[p]rovide information regarding the

procedure established under subdivision (1): (A) at student orientations; (B) on the institution's website; and (C) during employee onboarding programs." Ind. Code §§ 21-39.5-2-4(a)(1), (2). Defendants also admit that the Act states, in part, that "[e]ach institution shall … [r]efer complaints submitted under subdivision (1) to appropriate human resource professionals and supervisors for consideration in employee reviews and tenure and promotion decisions." Ind. Code § 21-39.5-2-4(a)(3). Defendants otherwise state that the Act speaks for itself.

**Polities adopted by Indiana University**

20.    S.E.A. 202 requires Indiana University to adopt policies to implement the Act's substantive requirements, described above.

**ANSWER:**    Defendants admit that the Act states (in Ind. Code § 21-39.5-2-2(d)) that "[t]he institution shall adopt a policy that establishes" certain disciplinary actions. Defendants further admit that the Act states (in Ind. Code § 21-39.5-2-1(b)) that "[s]ubject to subsection (c) [of Ind. Code § 21-39.5-2-1], each board of trustees of an institution shall establish a policy that provides that a faculty member may not be granted tenure or a promotion by the institution if, based on past performance or other determination by the board of trustees, the faculty member is: (1) unlikely to foster a culture of free inquiry, free expression, and intellectual diversity within the institution; (2) unlikely to expose students to scholarly works from a variety of political or ideological frameworks that may exist within and are applicable to the faculty member's academic discipline; or (3) likely, while performing teaching duties within the scope of the faculty member's employment, to subject students to political or ideological views and opinions that are unrelated to the faculty member's academic discipline or assigned course of instruction." Defendants otherwise state that the Act speaks for itself.

21.    Following the enactment of S.E.A. 202, Indiana University amended its faculty tenure policy (ACA-37) to include as an additional criterion for tenure that "[g]rants of tenure shall comply with the requirements of IC 21-39.5-2-1." (Exhibit 1).

**ANSWER:**    Defendants admit that the version of ACA-37 (entitled "Faculty and Librarian Tenure") dated June 14, 2024, added the quoted language to the list appearing under "Criteria for Tenure." Otherwise, Defendants state that ACA-37 speaks for itself, and Defendants are without knowledge or information sufficient to form a belief as to the truth of any allegations remaining in the paragraph and thus deny such allegations.

22.    Following the enactment of S.E.A. 202, Indiana University amended its faculty promotion policy (ACA-38) to include as an additional criterion for promotion that "[a]ll faculty promotions must comply with the requirements of I.C. 21-39.5-2-1." (Exhibit 2).

**ANSWER:**    Defendants admit that the version of ACA-38 (entitled "Faculty and Librarian Promotions") dated June 14, 2024, added the following language to the end of the paragraph under "Criteria for Promotion": "All faculty promotions must comply with the requirements of IC 21-39.5-21-1." Otherwise, Defendants state that ACA-38 speaks for itself, and Defendants are without knowledge or information sufficient to form a belief as to the truth of any allegations remaining in the paragraph and thus deny such allegations.

23.    Following the enactment of S.E.A. 202, Indiana University amended its academic appointee responsibilities and conduct policy (ACA-33), applying to the conduct of non-tenured and tenured faculty, and it cross-references the amended ACA-38. (Exhibit 3).

**ANSWER:**    Defendants admit that a revised version of ACA-33 (entitled "Academic Appointee Responsibilities and Conduct") took effect on July 29, 2024. Defendants also admit that ACA-33 states that ACA-33 applies to "academic appointees," and Defendants admit that ACA-33

defines "Academic appointee" as follows:  "an individual covered by ACA-14, Classification of Academic Appointments, including visiting, adjunct and acting faculty; academic specialists; and emeritus faculty. It does not include Student Academic Appointees covered by ACA-16."  Defendants deny that ACA-33 "cross-references the amended ACA-38" as alleged in paragraph 23.  Otherwise, Defendants state that ACA-33 speaks for itself, and Defendants are without knowledge or information sufficient to form a belief as to the truth of any allegations remaining in the paragraph and thus deny such allegations.

24.    Following the enactment of S.E.A. 202, Indiana University amended its faculty annual review policy (ACA-21) to include as an additional criterion for evaluation that "the procedure used in annual reviews shall…[c]omply with the requirements of IC 21-39.5."  (Exhibit 4).

**ANSWER:**    Defendants admit that the version of ACA-21 (entitled "Faculty and Librarian Annual Reviews") dated June 14, 2024, states, *e.g.*, "The Board of Trustees has resolved that the procedures used in annual reviews shall:  1. Preserve academic freedom.  2. Protect due process.  3. Recognize situational differences of diverse faculty.  4. Establish professional development as a goal.  5. Define a mechanism for initiating the in-depth review process.  6. Incorporate existing faculty review mechanisms.  7. Include peer review.  8. Comply with the requirements of IC 21-39.5."  Otherwise, Defendants state that ACA-21 speaks for itself, and Defendants are without knowledge or information sufficient to form a belief as to the truth of any allegations remaining in the paragraph and thus deny such allegations.

25.    These policies, adopted to implement S.E.A. 202, are binding on Indiana University's faculty, including the plaintiffs.

**ANSWER:**     Defendants state that any adopted policies speak for themselves.  Defendants otherwise state that they are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations; therefore, Defendants deny such allegations.

26.     Professor McDonald was informed during a meeting of the Bloomington Faculty Council that in determining promotions, in compliance with S.E.A. 202, the University will consider the number of complaints lodged against a faculty member for alleged violation of S.E.A. 202.  The number of complaints will be considered regardless of whether any complaint was ultimately determined to have merit.

**ANSWER:**     Defendants admit that the Act has a section (Ind. Code § 21-39.5-2-4) entitled "Complaint procedure; reporting requirements," and that the Act states (in Ind. Code § 21-39.5-2-4(a)(3)) that, *e.g.*, "[e]ach institution shall … [r]efer complaints submitted under subdivision (1) to appropriate human resources professionals and supervisors for consideration in employee reviews and tenure and promotion decisions."  Otherwise, Defendants state that the Act speaks for itself, and Defendants are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, particularly with respect to Professor McDonald's understanding of the referenced subject matter; therefore, Defendants deny such allegations.

27.     In that same meeting, faculty were also informed that the University will process and investigate anonymous complaints.

**ANSWER:**     Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, particularly with respect to the referenced understanding of the referenced subject matter; therefore, Defendants deny such allegations.

28.     Indiana University has amended its complaint process, managed University-wide via a management platform called "Ethics Point" to include complaints made on the basis that a faculty

member has failed "to foster intellectual diversity in the university learning environment." *See* *https://audit.iu.edu/anonymous-report/index.html#report,* last accessed September 9, 2024. A snapshot of the relevant homepage of that online form is below:



**ANSWER:**    Defendants admit that certain reports at Indiana University can be submitted through EthicsPoint. Defendants also admit that information regarding procedures for submitting reports is available on Indiana University's website. Defendants deny that the webpage located at the paragraph's referenced URL has the paragraph's quoted language. Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, and thus deny such allegations.

**Prior challenge to the statute**

29.    The plaintiffs previously filed a lawsuit in this Court challenging the constitutionality of the Act. *See Carr et al. v. Trustees of Purdue University, et al.* 1:24-cv-772-SEB-MJD (S.D. Ind.).

**ANSWER:**    Defendants admit that Plaintiffs previously filed in this Court a lawsuit, with the referenced caption and case number, raising constitutional claims involving the Act and seeking to enjoin enforcement of the Act.

30.    That complaint was dismissed without prejudice pursuant to motions filed under Federal Rule of Civil Procedure 12(b)(1), as the Court concluded that ripeness and standing depended on the University having enacted the policies required by the Act.  As Indiana University had not yet done so at the time the plaintiffs filed suit, the Court determined that it lacked subject-matter jurisdiction.

**ANSWER:**    Defendants admit that Plaintiffs previously filed a lawsuit in this Court raising constitutional claims involving the Act and seeking to enjoin enforcement of the Act, and that this Court dismissed "the whole matter" without prejudice for lack of jurisdiction, per rationale stated in the Court's decision, which speaks for itself (*Carr v. Trustees of Purdue University*, 2024 WL 3819424 (S.D. Ind. 2024)).  Defendants otherwise state that the allegations in this paragraph are legal assertions to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations; therefore, Defendants deny such allegations.

**Factual allegations regarding the plaintiffs**

31.    Professor David McDonald is an associate professor in the Department of Folklore and Ethnomusicology at Indiana University Bloomington.  His second term as Chair of that department concluded in August of 2024.

**ANSWER:**    Upon information and belief, admitted.

32.    He was awarded tenure in 2014 and is working for promotion to full professor during this academic year.  He will submit his full promotion package in August 2025.

**ANSWER:**    Upon information and belief, Defendants admit that Professor McDonald was awarded tenure in 2014.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and, therefore, deny such remaining allegations in this paragraph.

33.    His research and coursework focus on the ethnomusicology of violence, war, and social movements.  He has a specific focus on issues relating to Israel and Palestine.

**ANSWER:**    Upon information and belief, admitted.

34.    He will teach 4 courses in the 2024-2025 academic year, and he will supervise ten graduate students this academic year.

**ANSWER:**    Upon information and belief, Defendants admit that Professor McDonald is scheduled to teach four courses in the 2024-2025 academic year.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and, therefore, deny such remaining allegations in this paragraph.

35.    Professor James Scheurich is a Chancellor's Professor in the School of Education at Indiana University Indianapolis.

**ANSWER:**    Upon information and belief, admitted.

36.    Professor Scheurich was awarded tenure in approximately 1999, while a professor at the University of Texas, Austin.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore, deny all allegations in this paragraph.

37.    He was hired by Indiana University Indianapolis (then IUPUI) as a full professor in 2012.

**ANSWER:**    Upon information and belief, admitted.

38.    He was named a Chancellor's Professor, Indiana University Indianapolis, in 2024.

**ANSWER:**    Upon information and belief, admitted.

39.    He is also the Coordinator of the Urban Education Studies program, where he oversees the program's more than 70 doctoral students.

**ANSWER:**    Upon information and belief, admitted.

40.    His research and coursework focus on many issues of diversity, equity, and inclusion in the educational system and the surrounding society, including issues of systemic racism and anti-LGBTQ prejudice.

**ANSWER:**    Upon information and belief, admitted.

41.    He will teach 3 courses during the 2024-2025 academic year.

**ANSWER:**    Upon information and belief, admitted.

42.    The requirements imposed by the policies adopted by Indiana University, and by S.E.A. 202 described above, apply to Professors McDonald and Scheurich as they are "faculty members" of Indiana University as defined by the statute: they are employees of a state educational institution "whose employment duties include teaching students of the institution."  Ind. Code § 21-39.5-1-3.

**ANSWER:**    Defendants admit that part of the Act says that "[t]his section applies to an institution that grants tenure or promotions to faculty members."  Ind. Code § 21-39.5-2-1(a) (eff. July 1, 2024). Further, Defendants admit that the Act says "'[f]aculty member' means an employee of an institution whose employment duties include teaching students of the institution"; and Defendants admit, upon information and belief, that Professors McDonald and Scheurich are such employees.

Otherwise, Defendants deny that "Ind. Code § 39.5-1-3" is a Code provision containing the language referenced in the paragraph; Defendants state that the Act speaks for itself.

43.     Because of Indiana Code § 21-39.5-2-1(b)(1), Indiana University's Board of Trustees is required to adopt policies that result in the denial of promotions, loss of tenure, or discipline including, but not limited to, termination, demotion, and salary reduction to the plaintiffs if they are deemed unlikely to "foster a culture of free inquiry, free expression, and intellectual diversity within the institution."  Ind. Code § 21-39.5-2-1(b)(1).  The policy adopted by the University enacts this requirement.

**ANSWER:**    Defendants admit that the Act states (in Ind. Code § 21-39.5-2-1(b)(1)) that "[s]ubject to subsection (c) [of Ind. Code § 21-39.5-2-1], each board of trustees of an institution shall establish a policy that provides that a faculty member may not be granted tenure or a promotion by the institution if, based on past performance or other determination by the board of trustees, the faculty member is: (1) unlikely to foster a culture of free inquiry, free expression, and intellectual diversity within the institution …." Defendants further admit that Ind. Code § 21-39.5-2-1(c) states that "[a] policy established under subsection (b) must provide that the board of trustees of an institution may not consider the following actions by a faculty member when determining whether a faculty member may not be granted tenure or a promotion by the institution:  (1) [e]xpressing dissent or engaging in research or public commentary on subjects[;] (2) [c]riticizing the institution's leadership[;] (3) [e]ngaging in any political activity conducted outside the faculty member's teaching or mentoring duties at the institution."  Defendants deny that Ind. Code § 21-39.5-2-1(b)(1) references "discipline," "termination," "demotion," "salary reduction," or "loss of tenure."   Otherwise, Defendants state that the Act speaks for itself, and Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, such as the

paragraph's intended meaning of "[t]he policy adopted by the University," and thus deny the allegations in the paragraph.

44.    The plaintiffs do not know what it means to "foster a culture of free inquiry, free expression, and intellectual diversity within the institution." The plaintiffs therefore cannot discern what they are required to do or refrain from doing to avoid being deemed to have failed to "foster" these "cultures" under the University's policies and the Act. They are therefore currently changing the content and pedagogies of their courses, as well as their out-of-class interactions with students.

**ANSWER:**    Defendants are without knowledge of information sufficient to form a belief as to what Plaintiffs do or do not know or discern. Therefore, Defendants deny the allegations in this paragraph.

45.    In trying to determine what this requires of them, the plaintiffs understand that, in order to "foster" cultures of free inquiry and free expression, there is no requirement that this fostering take place solely in the context of the classroom, or in any manner limited to what is "scholarly" or "academic."

**ANSWER:**    Defendants are without knowledge of information sufficient to form a belief as to what Plaintiffs do or do not understand. Therefore, Defendants deny the allegations in this paragraph, and otherwise state that the Act speaks for itself.

46.    Given the vagueness of the policies and the Act, the plaintiffs are being compelled to speak and are prohibited from speaking in violation of their First Amendment rights. The alternative to compelled speech and self-censorship is to risk adverse employment actions, through and including termination. They are therefore currently changing the content and pedagogies of their courses, as well as their out-of-class interactions with students.

**ANSWER:**    The allegations in this paragraph contain legal assertions to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, and, thus, Defendants deny the allegations in this paragraph.

47.    Moreover, even if they could discern a meaning, the plaintiffs cannot discern in advance how they are to determine what, and to what degree, speech activities will be deemed to "foster a culture of free inquiry, free expression, and intellectual diversity within the institution."  The plaintiffs cannot discern, for example, what percentage of their time must be spent fostering "free inquiry" or "free expression" in order to be deemed to assist in fostering such "cultures."  They are therefore currently changing the content and pedagogies of their courses, as well as their out-of-class interactions with students.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, including with respect to what Plaintiffs can or cannot discern; therefore, Defendants deny the allegations in this paragraph.

48.    Solely because of S.E.A. 202, the policies now in effect at Indiana University deny promotions to the plaintiffs if they are deemed "unlikely to expose students to scholarly works from a variety of political or ideological frameworks that may exist within and are applicable to the faculty member's academic discipline," Ind. Code § 21-39.5-2-1(b)(2), and it subjects them to discipline including termination, demotion, and salary reduction if they are deemed not to have "introduced students to scholarly works from a variety of political or ideological frameworks that may exist within the curricula."  Ind. Code § 21-39.5-2-2(a)(2).

**ANSWER:**    Defendants admit that the Act states (in Ind. Code § 21-39.5-2-1(b)(2)) that "[s]ubject to subsection (c) [of Ind. Code § 21-39.5-2-1], each board of trustees of an institution shall

19

establish a policy that provides that a faculty member may not be granted tenure or a promotion by the institution if, based on past performance or other determination by the board of trustees, the faculty member is: … (2) unlikely to expose students to scholarly works from a variety of political or ideological frameworks that may exist within and are applicable to the faculty member's academic discipline …." Defendants also admit that the Act states (in Ind. Code § 21-39.5-2-2(a)(2)) that "[n]ot later than five (5) years after the date that a faculty member is granted tenure by an institution and not later than every five (5) years thereafter, the board of trustees of an institution shall review and determine whether the faculty member has met the following criteria: … (2) Introduced students to scholarly works from a variety of political or ideological frameworks that may exist within the curricula established by the: (A) board of trustees of the institution under IC 21-41-2-1(b); or (B) faculty of the institution acting under authority delegated by the board of trustees of the institution …." Defendants deny that Ind. Code § 21-39.5-2-1(b)(2) or Ind. Code § 21-39.5-2-2(a)(2) references "discipline including termination, demotion, and salary reduction." Otherwise, Defendants state that the Act and any "policy now in effect at Indiana University" speak for themselves, and Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, such as its intended meaning of "the policies now in effect," and thus deny the allegations in the paragraph.

49.     The plaintiffs have no idea what this means and cannot discern what they are required to do or refrain from doing to avoid running afoul of the Act or these policies. As a result they are therefore now changing the content and pedagogies of their courses, as well as their out-of-class interactions with students, or alternatively risking violation of the policies and the Act in order to maintain their academic freedom and integrity.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, including with respect to what Plaintiffs can or cannot discern; therefore, Defendants deny the allegations in this paragraph.

50.     The need to comply with the policies and the Act impacts nearly every aspect of Professor McDonald's work.  For example, he often teaches about Palestinian history, culture, and activism, as that is his area of expertise.  To satisfy the requirement that he foster cultures of free inquiry and free expression, he believes he will be required to allow students to express and inquire about common, but non-academic, perspectives regarding Israel and Palestine.  He does not want to do so, and he would not do so, absent the application of the policies and the Act.

**ANSWER:**     Upon information and belief, Defendants admit that Professor McDonald has taught subject matter referenced in this paragraph's second sentence.  Defendants otherwise are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and thus deny such allegations.

51.     He does not believe that he should be required to teach certain "divergent" scholarly perspectives regarding the Israeli-Palestinian conflict, including, for example, the once popular assertion that Palestinians do not exist and that their forcible dispossession in 1948 did not occur.  But he believes that the requirements that he foster a culture of "intellectual diversity"—which is defined as "multiple, divergent, and varied scholarly perspectives on an extensive range of public policy issues," Ind. Code § 21-39.5-1-5, and the requirement that he "expose students to scholarly works from a variety of political or ideological frameworks that may exist within and are applicable to the faculty member's academic discipline" require him to do so or risk negative consequences.

**ANSWER:**     Defendants admit that Indiana Code § 21-39.5-1-5 states that "'Intellectual diversity' means multiple, divergent, and varied scholarly perspectives on an extensive range of public

policy issues." Defendants further admit that Indiana Code § 21-39.5-2-1(b)(2) states that "[s]ubject to subsection (c) [of Ind. Code § 21-39.5-2-1], each board of trustees of an institution shall establish a policy that provides that a faculty member may not be granted tenure or a promotion by the institution if, based on past performance or other determination by the board of trustees, the faculty member is: … (2) unlikely to expose students to scholarly works from a variety of political or ideological frameworks that may exist within and are applicable to the faculty member's academic discipline …." Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, and thus deny such allegations.

52.    Professor McDonald taught an intensive freshman seminar prior to the beginning of this academic year. As part of that program, he participated in a panel discussion where professors from multiple disciplines offered their perspectives on the topic of Politics, Thought, and Voice. Professor McDonald presented on using one's voice as an instrument of political agency, and to illustrate the concept, played a one-minute clip of protesters opposing the war in Gaza using chants to express their political message. Four complaints were filed against Professor McDonald for allegedly violating the university's policies and S.E.A. 202. It took him multiple days of conferring with University administrators to resolve the complaints, which were all ultimately dismissed.

**ANSWER:**    Upon information and belief, Defendants admit that Professor McDonald taught the seminar referenced in the paragraph's first sentence. Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, and thus deny such allegations.

53.    In one of the classes he is teaching this semester, Palestinian history of activism is a core case study that Professor McDonald would typically rely upon. However, given the issues presented by the University's policies and the Act, Professor McDonald still does not know how to

remain compliant while also maintaining his research specialization and academic freedom.  This is especially the case given that he has already had four complaints filed against him for precisely the type of teaching he would normally do.  He has not yet decided how he will attempt to resolve this impossible position.

**ANSWER:**    Upon information and belief, Defendants admit that Professor McDonald has taught subject matter referenced in this paragraph's first sentence.  Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of this paragraph's remaining allegations, and thus deny such allegations.

54.    The need to comply with the policies and the Act impacts nearly every aspect of Professor Scheurich's work as well.  To satisfy the requirement that he foster cultures of free inquiry and free expression, he believes he will be required to allow students to express and inquire about common, but non-academic, perspectives regarding his area of expertise—inequities in the educational system.  He does not want to do so, and he would not do so, absent the application of the policies and the Act.

**ANSWER:**    Upon information and belief, Defendants admit that Professor Scheurich has taught subject matter referenced in this paragraph's second sentence.  Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of this paragraph's remaining allegations, and thus deny such allegations.

55.    As part of a doctoral seminar on historical inequities and injustices in education and the surrounding city/society, Professor Scheurich leads seminar discussions on the genocide of Native Americans and its continuing effects, the slavery of Black people and the continuing effects, and Jim Crow laws and effects, all of which is based on extensive research.  He believes and indicates to his students that there is no legitimate opposing side to be represented.  He does not believe that he

should be required to present "divergent" scholarly perspectives regarding the existence or scope of these events and their effects. But he believes that the requirements that he foster a culture of "intellectual diversity"—which is defined as "multiple, divergent, and varied scholarly perspectives on an extensive range of public policy issues," Ind. Code § 21-39.5-1-5, and the requirement that he "expose students to scholarly works from a variety of political or ideological frameworks that may exist within and are applicable to the faculty member's academic discipline" require him to do so or risk negative consequences.

**ANSWER:**    Upon information and belief, Defendants admit that Professor Scheurich has taught subject matter referenced in this paragraph's first sentence. Defendants also admit that Indiana Code § 21-39.5-1-5 states that "'Intellectual diversity' means multiple, divergent, and varied scholarly perspectives on an extensive range of public policy issues." Defendants further admit that Indiana Code § 21-39.5-2-1(b)(2) states that "[s]ubject to subsection (c) [of Ind. Code § 21-39.5-2-1], each board of trustees of an institution shall establish a policy that provides that a faculty member may not be granted tenure or a promotion by the institution if, based on past performance or other determination by the board of trustees, the faculty member is: … (2) unlikely to expose students to scholarly works from a variety of political or ideological frameworks that may exist within and are applicable to the faculty member's academic discipline …." Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of this paragraph's remaining allegations, and thus deny such allegations.

56.    Therefore, in order to attempt to comply with the policies and the statute, Professor Scheurich intends to assign readings that he and other education scholars believe are infected by racism, classism, and bias but that present the types of "divergent" or "varied" scholarly perspectives that are now required.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, and thus deny such allegations.

57.    Although the plaintiffs already seek to foster their own conceptions of cultures of free inquiry and free expression in their classrooms, they have no idea what the policies and the Act require, or what may expose them to complaints by students, which will ultimately be considered in employment decisions regardless of whether any such complaints have merit.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  Therefore, Defendants deny the allegations in this paragraph.

58.    The professors exercise their judgment and academic freedom to determine when further inquiry on a subject is no longer desirable or appropriate, and they have no way of knowing whether this type of in-the-moment decision-making will subject them to discipline or other employment consequences.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  Therefore, Defendants deny the allegations in this paragraph.

59.    Professor McDonald fears, for example, that his decision not to teach some political and historical narratives regarding the establishment of the Israeli state, and the dispossession of Palestinians, will subject him to claims of violation of this provision.  Solely because of the policies and the Act, Professor McDonald will heavily curtail classroom discussion, as he has no ability to ascertain in advance what will be deemed to run afoul of the policies and the Act.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  Therefore, Defendants deny the allegations in this paragraph.

60.    Professor Scheurich will create specific space in his courses to discuss "divergent" views, although he will only do so because of the existence of the policies and the Act and even though doing so runs counter to his pedagogical purposes and undermines the educational value of his instruction.  He will also attempt to comply by adding content to his courses that he would not otherwise include, because he believes it to be contrary to the educational objectives of the course or the scholarship that he views as appropriate, and he will have to remove what he considers to be high-quality content in order to accommodate that.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  Therefore, Defendants deny the allegations in this paragraph.

61.    Given the statute's uncertainty, imported into the University policies, to avoid running afoul of the policies, the plaintiffs are compelled to speak and are prohibited from speaking in violation of their First Amendment rights or risk adverse employment actions, through and including termination.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  Therefore, Defendants deny the allegations in this paragraph.

62.    The speech activities of the plaintiffs are protected by the First Amendment, as they retain the academic freedom to determine the content of their instruction, their pedagogies, and their interactions with students free from interference by the State.

**ANSWER:**    Defendants admit that the First Amendment protects certain freedoms. Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, such as the paragraph's intended meaning of "[t]he speech activities of the plaintiffs"; therefore, Defendants deny the allegations in this paragraph.

63.    Given the breadth and vagueness of the policies and Indiana Code § 21-39.5-2-2(a)(1) and (a)(2), the plaintiffs are subject to serious consequences if they continue to teach as they have for years.  As a result, they are changing the content and pedagogies of their courses, as well as their out-of-class interactions with students.  This compulsion to speak, or not to speak, or alternatively, to face the penalties imposed, violates the First Amendment.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, and, thus, Defendants deny the allegations in this paragraph.

64.    All of these harms will continue throughout the academic year.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, and, thus, Defendants deny the allegations in this paragraph.

65.    The speech in which the plaintiffs seek to engage is in no way antithetical to the interests of their employer.

**ANSWER:**    Defendants are without knowledge or information sufficient to determine the speech in which Plaintiffs seek to engage.  Therefore, Defendants deny the allegations of this paragraph.

66.     The plaintiffs' desire to refrain from certain speech is in no way antithetical to the interests of their employer.

**ANSWER:**    Defendants are without knowledge or information sufficient to know Plaintiffs' referenced "desire."  Therefore, Defendants deny the allegations in this paragraph.

67.     The interests of the plaintiffs in engaging in and refraining from protected speech greatly outweighs any countervailing interest by the State.

**ANSWER:**    Defendants are without knowledge or information sufficient to know the referenced "interests" of Plaintiffs.  Therefore, Defendants deny the allegations in this paragraph.

68.     At all times defendants have acted and have failed to act under color of state law.

**ANSWER:**    Denied.

69.     Plaintiffs are being threatened with and are being caused irreparable harm for which there is no adequate remedy at law.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, and, thus, Defendants deny the allegations in this paragraph.

**Legal claims**

70.     Indiana Code §§ 21-39.5-2-1(b)(1), (2) and Indiana Code §§ 21-39.5-2-2(a)(1), (2), and the policies that the University adopted as directed by these statutes, violate the First Amendment to the extent that they infringe the plaintiffs' academic freedom.

**ANSWER:**    The allegations in this paragraph are legal assertions to which no response is required.  To the extent a response is required, Defendants are without knowledge or information

sufficient to form a belief as to the truth of this paragraph's allegations, and, thus, Defendants deny the allegations in this paragraph.

71.     Indiana Code §§ 21-39.5-2-1(b)(1), (2) and Indiana Code §§ 21-39.5-2-2(a)(1), (2) and the policies that the University adopted as directed by these statutes, violate the First Amendment and the Due Process Clause of the Fourteenth Amendment in that they are impermissibly vague.

**ANSWER:**     The allegations in this paragraph are legal assertions to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of this paragraph's allegations, and, thus, Defendants deny the allegations in this paragraph.

**Request for relief**

WHEREFORE, plaintiffs request that this Court:

a.     accept jurisdiction of this case and set it for hearing at the earliest opportunity;

b.     declare that the defendants' policies and Indiana Code §§ 21-39.5-2-1(b)(1), (2), 21-39.5-2-2(a)(1), (2) are unconstitutional for the reasons noted above;

c.     enter a preliminary injunction, later to be made permanent, enjoining the defendants' policies and Indiana Code §§ 21-39.5-2-1(b)(1), (2), 21-39.5-2-2(a)(1), (2);

d.     award plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

e.     award all other proper relief.

**ANSWER:**     Defendants admit that Plaintiffs request the referenced relief in this action. Defendants deny any violations or wrongdoing and therefore deny that Plaintiffs are entitled to relief in this action.

### Additional Defenses

1.     Plaintiffs fail to state a viable claim, including for lack of ripeness and lack of standing as to requested relief.

2.      This action does not qualify for declaratory judgment or injunctive relief, including for prematurity and lack of ripeness.

3.      This action is at least partially barred by Eleventh-Amendment sovereign immunity.

4.      This action is at least partially barred or limited by issue-preclusion principles.

Dated: November 7, 2024                    Respectfully submitted,

                                           */s/ John R. Maley*
                                           John R. Maley
                                           Dylan A. Pittman
                                           BARNES & THORNBURG LLP
                                           11 South Meridian Street
                                           Indianapolis, IN 46204
                                           Telephone:     317.231.7464
                                           Facsimile:     317.231.7433
                                           Email:         jmaley@btlaw.com
                                                          dpittman@btlaw.com

                                           *Counsel for Defendants Trustees of Indiana University*

DMS 45174256.1